UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


NATALIE ARBOGAST,

      Plaintiff,

v.                                    Civil Action No. 2:23-cv-00427

SKY ZONE, LLC;
CIRCUSTRIX HOLDINGS, LLC;
CIRCUSTRIX, LLC; and
JOHN DOE MANUFACTURERS 1-10,

      Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is defendants' Motion to Compel Arbitration and for Judgment on the Pleadings (ECF No. 13), filed September 15, 2023.


<u>I. BACKGROUND</u>

A.   <u>Facts</u>

      On August 23, 2019, plaintiff Natalie Arbogast visited an indoor trampoline park in Charleston, West Virginia, operated by Fitness, Fun and Freedom, doing business as Sky Zone, a franchisee of Sky Zone, LLC (collectively, "Sky Zone").  <u>See</u> Amend. Compl. ¶¶ 6, 7, 22, Notice to Remove Ex. I, ECF No. 1-9; <u>see</u> <u>also</u> Defs.' Mem. Supp. at 1, ECF No. 14.  All patrons

wishing to enjoy Sky Zone's facilities are required to sign a document entitled "Participation Agreement, Release and Assumption of Risk (The Agreement) – Sky Zone Charleston" ("Participation Agreement" or "contract") before they may do so, or, if the participant is a minor, they must have a parent or guardian sign the contract on their behalf.  See Amend. Compl. ¶ 20; Participation Agreement, Defs.' Mot. Compel Ex. A, ECF No. 13-1.  As plaintiff was fifteen-years old at the time, plaintiff's mother, Regina Arbogast, electronically signed the contract, listing plaintiff as an "Included Minor[ ]." Participation Agreement at 7–8; Amend. Compl. ¶¶ 20–22. Plaintiff did not sign the contract.  Participation Agreement at 7–8.

     At the time of plaintiff's visit, Sky Zone operated a trampoline obstacle course called the "Ninja Run," which consisted of various obstacles, raised platforms, and intertwined trampolines.  Amend. Compl. ¶¶ 18, 22–24.  Plaintiff ran the Ninja Run and, while jumping from one raised platform to another, her foot allegedly became entangled in an exposed steel support joist.  Id. at ¶¶ 25–26.  As a result, plaintiff says she suffered fractures in her foot which required surgery and rehabilitation.  Id. at ¶¶ 27–28.

In large, bold, capitalized font beginning on the first page on the Participation Agreement is a notice to the parent or guardian that, "even if [Sky Zone] and all other Releasees use reasonable care in providing this activity, there is a chance your child may be seriously injured or killed . . . because there are certain dangers inherent in the activity which cannot be avoided or eliminated," and that signing the contract means the parent or guardian is "giving up your child's right to and your right to recover from [Sky Zone] and all other Releasees in a lawsuit for any personal injury, including death, to your child that results from the risks that are a natural part of the activity."  Participation Agreement at 1–2.  The Participation Agreement also contains sections entitled "Release of Potential Injuries," "Voluntary Assumption of Risk," "Release of Liability," and so forth.  Id. at 2–3.

Critically, the contract includes an arbitration clause, which reads, in part:

> I understand that by agreeing to arbitrate any dispute as set forth in this section, I am waiving my right, and the right(s) of the minor child(ren) above, to maintain a lawsuit against [Sky Zone] and the other Releasees for any and all claims covered by this Agreement. . . .
>
> Any dispute, claim or controversy arising out of or relating to my or the child's access to and/or use of the Sky Zone premises and/or its equipment, including the determination of the scope or applicability of this agreement to

> arbitrate, shall be . . . determined by
> arbitration in the county of the Sky Zone
> facility, West Virginia, before one
> arbitrator. The arbitration shall be
> administered by JAMS pursuant to its Rule 16.1
> expedited arbitration rules and procedures. .
> . .
>
> This clause shall not preclude parties from
> seeking provisional remedies in aid of
> arbitration from a court of appropriate
> jurisdiction. This Agreement shall be
> governed by, construed and interpreted in
> accordance with the laws of the State of West
> Virginia, without regard to choice of law
> principles. Notwithstanding the provision
> with respect to the applicable substantive
> law, any arbitration conducted pursuant to the
> terms of this Agreement shall be governed by
> the Federal Arbitration Act (9 U.S.C., Sec. 1-
> 16). . . .

Id. at 4 (emphasis omitted).

The "I Agree" box next to the arbitration clause has
been digitally checked. Id. At the end of the contract appears
Regina Arbogast's name, date of birth, address, and contact
information, and Natalie Arbogast is listed as a minor
participant. Id. at 6-7. Attached to the Participation
Agreement is a "Signature Certificate" certifying that Regina
Arbogast digitally signed the contract on August 22, 2019, and
again lists plaintiff as the included minor. Id. at 8.

B.   Procedural History

On August 21, 2020, plaintiff's parents filed suit on
plaintiff's behalf in Kanawha County Circuit Court, as plaintiff

was still a minor at that time.  See Arbogast, et al. v.

Fitness, Fun, and Freedom, Inc. d/b/a Sky Zone, et al., Civ. No.

20-C-711, ECF No. 1-1 at 4.  The action was brought against Sky

Zone and Fun Spot Manufacturing, LLC ("Fun Spot"), a trampoline

component manufacturer who had supplied parts to Sky Zone.  On

October 9, 2020, Sky Zone moved to compel arbitration and

dismiss the case.  On February 11, 2021, the court granted Sky

Zone's motion, ordering that the parties engage in arbitration

and dismissing Sky Zone from the case.  On March 22, 2021,

plaintiffs voluntarily dismissed Fun Spot from the action, on

the basis of "evidence indicating Fun Spot was not a supplier of

the equipment at issue."  Id.

        On August 19, 2021, plaintiff's parents instituted a

second action, also in the Circuit Court of Kanawha County.  On

May 10, 2023, an amended complaint was filed that made Natalie

Arbogast the sole plaintiff and named CircusTrix Holdings, LLC

and CircusTrix, LLC as additional defendants.[1]  The three named

defendants are related corporate entities that engage in

---

[1] Sky Zone is a private limited liability company with its sole
member being CircusTrix Holdings, LLC.  ECF No. 1 at 5.
Likewise, CircusTrix, LLC's sole member is CircusTrix Holdings,
LLC; that company's sole member is Trampoline Acquisition
Holdings, LLC; that company's sole member is Trampoline
Acquisition Parent Holdings, LLC; that company has forty-eight
members, some of which also have sub-members.  Id. at 5-6.  No
member or sub-member is a citizen of West Virginia.  Id.

commercial trampoline park design, construction, and management.
Amend. Compl. ¶ 5; Answer ¶ 5, ECF No. 5.  The amended complaint
explains that plaintiff turned eighteen on July 28, 2022, and
that she disaffirmed the exculpatory relief executed by her
mother when Regina Arbogast signed the Participation Agreement.
Amend. Compl. ¶ 21.  Defendants removed this action to federal
court on June 9, 2023, pursuant to the court's diversity
jurisdiction.  See Notice of Removal, ECF No. 1.

The amended complaint asserts the following causes of
action against all defendants: Count I – Strict Liability, id.
at ¶¶ 29–37; Count II – Negligence, id. at ¶¶ 38–52; and Count
III – Breach of Warranties, id. at 53–60.  Plaintiff seeks
compensatory damages for, among other things, medical and
hospital bills, emotional distress, and mental pain and
suffering, as well as punitive damages and attorney fees.

On December 15, 2023, defendants filed the Motion to
Compel Arbitration and For Judgment on the Pleadings, seeking to
compel plaintiff to arbitrate all counts pursuant to the
Arbitration Clause in the Participation Agreement.  Plaintiff
filed a response contending that the Arbitration Clause is not
binding on her, both because her mother lacked authority to
enter into the contract on her behalf and because she
disaffirmed the release when she reached eighteen years of age.

## II. LEGAL STANDARD

A motion for judgment on the pleadings can be brought under Federal Rule of Civil Procedure 12(c) "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are reviewed using the same standard as that of motions to dismiss brought pursuant to Rule 12(b)(6). Williamson v. Prime Sports Mktg., LLC, 101 F.4th 302 (4th Cir. 2024) (citing Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999); Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 405 (4th Cir. 1998)).

The standard for Rule 12(b)(6) motions to dismiss is one of facial plausibility. See Edwards, 178 F.3d at 243 (citing Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)) ("'The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." (internal quotation marks omitted)). A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (to withstand a Rule 12(b)(6) motion to dismiss, a complaint

must plead sufficient facts "to state a claim to relief that is plausible on its face"); Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"[A] plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court . . . to infer more than the mere possibility of that which is alleged." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Iqbal, 556 U.S. at 679).

When presented with a Rule 12(b)(6) motion to dismiss, the court must first "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), and then "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor," Edwards, 178 F.3d at 244. If the

complaint at that point fails to state a claim, the motion to dismiss is granted.

A Rule 12(c) motion for judgment on the pleadings can rely only on the pleadings and the exhibits attached thereto. See Fed. R. Civ. P. 12(d). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Id. If this occurs, all parties must be given "a reasonable opportunity to present all the material that is pertinent to the motion." Id. "A court may, however, consider a 'written instrument' attached as an exhibit to a pleading, see Fed. R. Civ. P. 10(c), 'as well as [documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)) (alteration in original).

### III. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. section 1, et seq., was enacted by Congress "to assure judicial enforcement of privately made agreements to arbitrate by placing them upon the same footing as other contracts." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016)

(quoting Whiteside v. Teltech Corp., 940 F.2d 99, 101 (4th Cir. 1991)) (internal quotation marks omitted).  Courts rigorously enforce parties' chosen arbitration procedures.  See Epic Sys. Corp. v. Lewis, 584 U.S. 497, 506 (2018).  "Arbitration is a matter of contract and consent, and [the Supreme Court] ha[s] long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." Coinbase, Inc. v. Suski, --- U.S. ---, 144 S. Ct. 1186, 1191 (2024); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) ("'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'") (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 583 (1960)).

> There are three general types of arbitration disputes:
>
> A contest over "the merits of the dispute" is a first-order disagreement, First Options [of Chicago, Inc. v. Kaplan], 514 U.S. [938,] 941 [(1995)] (emphasis deleted), the resolution of which depends on the applicable law and relevant facts.  The parties may also have a second-order dispute — "whether they agreed to arbitrate the merits" — as well as a third-order dispute — "who should have the primary power to decide the second matter."  Ibid. (emphasis deleted).

Coinbase, 144 S. Ct. at 1193.  This matter concerns all three types of disputes: the parties disagree as to who has the authority to determine the threshold matter of arbitrability in this case (the court or the arbitrator), whether the parties are

bound to arbitrate, and of course, the parties dispute the merits of the case.

In determining whether a valid contract exists, the court looks to state substantive law.  If that analysis reveals that there is a valid agreement to arbitrate, the matter is governed by the FAA.[2]  This is the case at present, following both the general rule and under the terms of the Participation Agreement, which says that it is to be interpreted pursuant to state substantive law and that any arbitration proceedings will occur pursuant to the FAA.

A.    Whether the Court Can Determine Arbitrability

"Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide."  BG Grp., PLC v. Republic of Argentina, 572 U.S. 25, 33 (2014) (citing

_____

[2] The FAA is preemptive of state law.  The Fourth Circuit has enumerated four elements which, when met, trigger the application of the FAA.  Those elements are:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute.

Galloway, 819 F.3d at 84.

11

<u>United Steelworkers</u>, 363 U.S. at 582).  "If the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions."  <u>Id.</u> at 34.  "[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability,'" including "questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'"  <u>Id.</u> (quoting <u>Howsam</u>, 537 U.S. at 84); <u>see also</u> <u>First Options</u>, 514 U.S. at 944–45 (citing <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985); <u>United Steelworkers</u>, 363 U.S. at 582–83).

Usually, the determination of arbitrability is made by the court.  <u>Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union</u>, 665 F.3d 96, 102 (4th Cir. 2012) (quoting <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 649 (1986)).  "Parties, to be sure, can agree to arbitrate arbitrability, but such agreement 'must . . . clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate.'"  <u>Id.</u> (quoting <u>Carson v. Giant Food, Inc.</u>, 175 F.3d 325, 329 (4th Cir. 1999)) (some internal quotation marks omitted) (ellipses in original); <u>see also</u> <u>First Options</u>, 514 U.S. at 942 ("Courts should not assume

that the parties agreed to arbitrate arbitrability unless there
is 'clea[r] and unmistakabl[e]' evidence that they did so."
(quoting AT&T Techs., 475 U.S. at 649) (alterations in
original)); Coinbase, 144 S. Ct. at 1193.  "An agreement to
allow an arbitrator to decide whether a dispute is subject to
arbitration — i.e., its arbitrability — 'is simply an
additional, antecedent agreement . . ., and the FAA operates on
this additional arbitration agreement just as it does on any
other.'"  Coinbase, 144 S. Ct. at 1192 (quoting Rent-A-Center,
W., Inc. v. Jackson, 561 U.S. 63, 70 (2010)) (ellipses in
original).

　　　　The Participation Agreement explicitly provides that
jurisdictional issues such as unconscionability and
arbitrability are to be decided by the arbitrator: "Any dispute,
claim or controversy arising out of or relating to my or the
child's access to and/or use of the Sky Zone premises and/or its
equipment, including the determination of the scope or
applicability of this agreement to arbitrate, shall be . . .
determined by arbitration . . . ."  Participation Agreement at
4.  The issue, then, is whether this agreement also binds the
plaintiff, where the contract was signed by her mother and Sky
Zone.  If the contract signed by plaintiff's mother bound and
continues to bind plaintiff, then the arbitrability of the case

and the merits of the case are matters for the arbitrator to consider.

There is an absence of authority by the West Virginia Supreme Court of Appeals on this specific matter. However, if the infant alone has signed the contract, West Virginia law provides that "[c]ontracts by minors are generally not void, but voidable only, and may be ratified or disaffirmed after majority." Syl. Pt. 1, Hobbs v. Hinton Foundry Mach. & Plumbing Co., 82 S.E. 267 (W. Va. 1914); see also Syl. Pt. 2, Andrews v. Floyd, 170 S.E. 897 (W. Va. 1933) ("Contracts of infants generally are not void but voidable at infant's election, and may be ratified or disaffirmed after majority.").

In Fitness, Fun, & Freedom, Inc. v. Perdue, No. 20-0344, 2021 WL 653240 (W. Va. Feb. 19, 2021) (unreported), then-sixteen-year-old B.P. went to a Sky Zone trampoline park, was granted entry upon submitting a signed Participation Agreement – upon which he had forged his mother's signature – and proceeded to jump on a trampoline and break both his legs. Id. at *1. B.P. was seventeen – still a minor – when the action was filed, but upon reaching majority, he disaffirmed the Participation Agreement. Id. at *2. The state circuit court denied Sky Zone's motion to compel arbitration, and the West Virginia Supreme Court of Appeals affirmed, finding that "[t]he record on

appeal clearly shows that B.P. was a minor when he signed petitioner's Release, and that B.P. disaffirmed the Release, its arbitration clause, and its delegation provision, when he reached the age of majority." Id. at *3. Thus, "there was no valid, enforceable arbitration agreement between the parties." Id.

Defendants maintain that when Regina Arbogast signed the contract, as plaintiff's parent and legal guardian, plaintiff was foreclosed from disaffirming the contract.[3] They argue that plaintiff was required to specifically challenge the applicability of the delegation provision to keep the question of who determines the threshold issue of arbitrability before the court. The rule to which defendants cite in Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) — that the plaintiffs would have needed to specifically challenge the agreement to arbitrate, not the contract as a whole, to trigger the court's review of whether the issue is arbitrable — is inapplicable to the case at hand. Because the plaintiff here was not a signatory to that contract, the court instead considers whether plaintiff agreed to the arbitration term. Plaintiff did not.

---

[3] Defendants further contend that plaintiff cannot refuse the contract under the doctrine of estoppel and as a third-party beneficiary. These latter arguments are discussed below, infra, Section III.B.2.

The United States Supreme Court described the relevant inquiry in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995), which defendants do not discuss.  In First Options, the Court highlights "an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  Id. at 944 (quoting AT&T Techs., 475 U.S. at 649; citing United Steelworkers, 363 U.S. at 582 n. 7) (alterations in original). Faced with this presumption and the fact that plaintiff disaffirmed the contract upon reaching majority, plaintiff is not bound by the delegation provision and it is for the court to determine the matter of arbitrability.

B.    **Whether the Agreement to Arbitrate the Merits and the Pre-Injury Release Bind the Minor**

While plaintiff's disaffirmance of the Participation Agreement is sufficient to bring the question of arbitrability before the court, the court now must consider two related but distinct issues: (1) whether a parent may bind her minor child to a pre-injury release of claims, including claims for negligence; and (2) whether an agreement to arbitration is enforceable where a parent agreed to it on behalf of her minor child and the child at majority disaffirmed the agreement.

The Supreme Court of Appeals of West Virginia has not addressed either issue, so the court must predict how the state high court would hold if confronted with these issues. See <u>Doe v. Doe</u>, 973 F.2d 237, 240 (4th Cir. 1992). In so doing, the court may rely on "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions." <u>Wells v. Liddy</u>, 186 F.3d 505, 528 (4th Cir. 1999) (citing <u>Liberty Mut. Ins. Co. v. Triangle Indus.</u>, 957 F.2d 1153, 1156 (4th Cir. 1992)). The court also considers related holdings in other jurisdictions.

1.    The Pre-Injury Release

Although there is no West Virginia caselaw that directly addresses the pre-injury release issue presented here, there are three tangentially related cases that are worthy of note. First are two cases, <u>Johnson v. New River Scenic Whitewater Tours, Inc.</u>, 313 F. Supp. 2d 621 (S.D.W. Va. 2004) (Chambers, J.), and <u>Murphy v. North American River Runners, Inc.</u>, 412 S.E.2d 504 (W. Va. 1991), which both invalidated pre-injury releases in the context of whitewater rafting, an activity for which West Virginia has a statutory standard of care. See W. Va. Whitewater Responsibility Act, W. Va. Code § 20-3B-1-5 (1987). In <u>Johnson</u>, a minor died while participating

17

in a whitewater rafting excursion organized by her church, for which a church representative signed a pre-injury release and indemnification on the minor's behalf prior to the activity. 313 F. Supp. 2d at 623–25, 628.  The court held that the minor "could not have validly executed an anticipatory release agreement — and, therefore, none could have done so on her behalf," id. at 628, and remarked that it is "well settled that where a principal . . . lacks contractual capacity by reason of infancy, any contract entered into on her behalf by her agent . . . would be voidable," id. at 628 n. 6.

In Murphy, the adult plaintiff was thrown overboard and injured during a whitewater rafting trip, for which the plaintiff had signed a pre-injury release prior to the trip during which plaintiff was injured when the rafting guide attempted to rescue another raft.  412 S.E.2d at 507–08.  The court addressed the validity of such pre-injury releases that exempt the defendant-operator from tort liability, holding that "when a statute imposes a standard of conduct, a clause in an agreement purporting to exempt a party from tort liability to a member of the protected class for the failure to conform to that statutory standard is unenforceable."  Syl. Pt. 1, id.

Yet Johnson and Murphy are both distinguishable because of the statutory standard of care for whitewater rafting

in West Virginia, whereas there is no such standard for the
activities Natalie Arbogast was participating in when she was
injured.  Thus, these cases cannot support plaintiff's
contention that her mother was incapable of contracting on her
behalf regarding the pre-injury release, although they may
indicate how the West Virginia legislature and courts view the
public policy of pre-injury releases.

    In Kyriazis v. University of West Virginia, 450 S.E.2d
649 (W. Va. 1994), the West Virginia Supreme Court of Appeals
addressed the issue of pre-injury releases where the signatory
and injured party was an adult and the agreement was made with a
community non-profit, in this case, the University of West
Virginia Rugby Club.  Id. at 652.  The court cited its previous
reasoning regarding pre-injury releases from Murphy:

> Generally, in the absence of an applicable
> safety statute, a plaintiff who expressly and,
> under the circumstances, clearly agrees to
> accept a risk of harm arising from the
> defendant's negligent or reckless conduct may
> not recover for such harm, unless the
> agreement is invalid as contrary to public
> policy. . . .
>
> A clause in an agreement exempting a party
> from tort liability is unenforceable on
> grounds of public policy if, for example, (1)
> the clause exempts a party charged with a duty
> of public service from tort liability to a
> party to whom that duty is owed, or (2) the
> injured party is similarly a member of a class
> that is protected against the class to which
> the party inflicting the harm belongs.

Syl. Pt. 1, in part & Syl. Pt. 2, id. (emphasis in original).
The court then considered whether the Rugby Club constituted a
"public service," following the factors laid out in Tunkl v.
Regents of University of California, 383 P.2d 441 (Cal. 1963)
(en banc).  Id. at 654.  The court found that "the University
qualifie[d] as a 'public service,' and that it possessed a
decisive bargaining advantage over the appellant when he
executed the Release, [and thus that] the anticipatory Release
[was] void as a matter of West Virginia public policy."  Id. at
655.  Kyriazis is distinguishable from the current action
because it involved a public service and did not involve the
release of prospective rights of a minor.

Numerous other jurisdictions have considered these
issues, and there emerges clear majority and minority positions.
The majority of state high courts have held that pre-injury
liability waivers signed by a parent or guardian releasing a
minor child's future claims for negligence are unenforceable as
a matter of law as contrary to public policy.  See Woodman ex
rel. Woodman v. Kera LLC, 785 N.W.2d 1 (Mich. 2010) (holding
that pre-injury waiver of liability signed by father did not bar
child's negligence action against commercial indoor play
company); Hojnowski v. Vans Skate Park, 901 A.2d 381 (N.J. 2006)
(holding that public policy prohibited parent from releasing,
pre-injury, minor child's potential tort claims from use of

commercial recreational facility); <u>Hawkins ex rel. Hawkins v.</u>
<u>Peart</u>, 37 P.3d 1062 (Utah 2001) (holding pre-injury release
signed by mother on behalf of minor child with horse riding
business was void), <u>superseded by statute as stated in</u> <u>Taylor v.</u>
<u>Taylor</u>, 517 P.3d 380 (Utah 2022) (relating that Utah statute
prohibits parents from releasing minor child's prospective
negligence claims); <u>Miller as Next Friend of E.M. v. House of</u>
<u>Boom Ky., LLC</u>, 575 S.W.3d 656 (Ky. 2019) (holding pre-injury
exculpatory agreement signed by parent on behalf of minor child
with for-profit entity not enforceable under Kentucky law);
<u>Scott By & Through Scott v. Pac. W. Mountain Resort</u>, 834 P.2d
Wash. 1992) (en banc) (holding parents did not have legal
authority to waive child's future cause of action for personal
injuries from negligence of commercial ski resort); <u>Cooper v.</u>
<u>Aspen Skiing Co.</u>, 48 P.3d 1229 (Colo. 2002) (en banc) (holding
that parent cannot release competitive ski racing club from
prospective negligence claims by minor child), <u>superseded by</u>
<u>statute as stated in</u> <u>Miller v. Crested Butte, LLC</u>, 549 P.3d 228
(Colo. 2024) (noting legislative provision enacted to supersede
<u>Cooper</u>, "which precluded parental waiver of liability for
ordinary negligence claims"); <u>Justice v. Marvel, LLC</u>, 979 N.W.2d
894 (Minn. 2022) (holding pre-injury waiver signed by parent on
behalf of minor child with amusement play area did not preclude
recovery by minor child); <u>Kirton v. Fields</u>, 997 So. 2d 349 (Fla.

2008) (holding pre-injury release signed by parent with commercial activity on behalf of minor child unenforceable).

The same is true for intermediate state appellate courts.  See Blackwell v. Sky High Sports Nashville Operations, LLC, 523 S.W.3d 624 (Tenn. Ct. App. 2017) (holding that pre-injury waiver signed by parent on behalf of minor child at trampoline park was unenforceable); Meyer v. Naperville Manner, Inc., 634 N.E.2d 411 (Ill. App. 1994) (holding that mother's waiver of liability did not bar minor child's future cause of action against horseback riding school); Munoz v. II Jaz Inc., 863 S.W.2d 207 (Tex. App. 1993) (holding that Family Code's grant of powers to parents to make legal decisions concerning child did not give parents power to waive, pre-injury, child's cause of action for personal injuries with amusement park); Santiago v. Philly Trampoline Park, LLC, 291 A.3d 1213, 1229 (Pa. Super. 2023) (holding that pre-injury release signed by parent on behalf of minor child with Pennsylvania Sky Zone facility was unenforceable), appeal granted sub nom. Schultz v. Sky Zone, LLC, 304 A.3d 330 (Table) (Pa. 2023).  In all of the above-cited cases, the state court determined that a pre-injury release of liability signed by a parent on behalf of her minor

child, when entered into with a commercial entity, was
unenforceable.[4]

Federal courts that have addressed the issue,
predicting how the local state high courts would rule, have also
found that such agreements are unenforceable.  See J.T. ex rel.
Thode v. Monster Mountain, LLC, 754 F. Supp. 2d 1323 (M.D. Ala.
2010) (holding that liability release signed by coach with
parent's written authority on behalf of minor child was not
binding on minor, when made with commercial motocross facility);
Paz v. Life Time Fitness, Inc., 757 F. Supp. 2d 658 (S.D. Tex.
2010) (holding that mother's pre-injury release of commercial
fitness center operator for minor child's injuries was not
enforceable); Holly Wethington v. Swainson, 155 F. Supp. 3d 1173

---

[4] By way of contrast, several courts have held that such releases
are enforceable when made with a non-profit entity.  See Doyle
v. Bowdoin Coll., 403 A.2d 1206 (Me. 1979) (holding that pre-
injury release signed by parent on behalf of minor child to play
floor hockey was enforceable); Walker v. Virgin Islands Waste
Mgmt. Auth., 62 V.I. 109, 116 (2015) (holding that pre-injury
release agreement signed by guardian on behalf of minor child to
waive ordinary negligence claims against non-profit institution
was enforceable); Zivich v. Mentor Soccer Club, Inc., 696 N.E.2d
201, 219 (Ohio 1998) (holding that pre-injury release agreement
signed by parent on behalf of minor child indemnifying non-
profit soccer club for ordinary negligence was enforceable);
Sharon v. City of Newton, 769 N.E.2d 738 (Mass. 2002) (holding
that pre-injury release signed by parent on behalf of minor
child for participation in cheerleading program at public high
school was valid); Wabash Cnty. Young Men's Christian Ass'n,
Inc. v. Thompson, 975 N.E.2d 362 (Ind. Ct. App. 2012) (holding
that pre-injury release barred minor's claim against YMCA as the
softball field owner).

(W.D. Okla. 2015) (holding that pre-injury release signed by minor with skydiving company, and parent's ratification thereof, was unenforceable and void); Harrigan v. New England Dragway, Inc., Civ. No. 13-10132-JCB, 2014 WL 12589625 (D. Mass. Jan. 2, 2014) (holding that pre-injury release signed by parent on behalf of minor child with commercial entity was unenforceable as contrary to public policy to the extent it barred minor's claims).[5]

A number of common arguments in favor of holding such pre-injury releases unenforceable emerge, including that the relevant state legislature or high court restricted the ability of parents to settle their children's post-injury claims by requiring court approval of some sort – a requirement also maintained in West Virginia. See Woodman ex rel. Woodman, 785 N.W.2d at 14; Scott By & Through Scott, 834 P.2d at 11–12; J.T. ex rel. Thode, 754 F. Supp. 2d at 1326. Courts similarly invoked the doctrine of parens patriae, wherein the state interjects its authority to act in the best interest of minors. See Fields v. Kirton, 961 So. 2d 1127, 1130 (Fla. App. 2007), approved, 997 So. 2d 349 (Fla. 2008); Harrigan, 2014 WL 12589625; Hojnowski, 901 A.2d at 387. Some courts reasoned that

---

[5] But see Mohney v. USA Hockey, Inc., 5 F. App'x 450 (6th Cir. 2001) (unpublished) (holding that pre-injury release signed by minor and father was valid).

commercial entities are better positioned to reduce the risk of harm to children, as children likely cannot limit harm to themselves in such commercial spaces but businesses can do so by better training staff or inspecting their facilities.  See Hojnowski, 901 A.2d at 387–88.  Indeed, some courts wrote that businesses could also mitigate the risk of costly litigation by purchasing insurance and spread the costs across its customers.  See id.; Miller as Next Friend of E.M., 575 S.W.3d at 662.  Other courts determined that the threat of litigation may incentivize businesses to keep their premises safe for children.  See Kirton, 997 So. 2d at 358.  Still others determined that if parents were empowered to waive their children's prospective claims and were subsequently unable to pay for their children's medical care, the state — and thus, the taxpayers — would have to foot the bill.  See Galloway v. State, 790 N.W.2d 252, 257 (Iowa 2010).

Arguments for allowing pre-injury releases with non-profit or community entities include that such activities serve important societal functions, such as teaching children important life skills, and that without such waivers, the organizations may not be able to continue providing such activities.  See Zivich v. Mentor Soccer Club, 696 N.E.2d 201, 207 (Ohio 1998); Hohe v. San Diego Unified Sch. Dist., 224 Cal. App. 3d 1559, 1564 (Ct. App. 1990); Walker, 62 V.I. at 120–21.

The court notes one court that has held that a pre-injury release signed by a parent on behalf of a minor child with a for-profit commercial entity was valid, being <u>BJ's Wholesale Club, Inc. v. Rosen</u>, 80 A.3d 345 (Md. 2013). In that case, the injured minor's parents signed an agreement, including an exculpatory clause, so that the child could play at a supervised play area at BJ's Wholesale Club while his parents shopped. <u>Id.</u> at 346. The court deferred to the determination of a parent of what potential risks and benefits she was willing to accept for her child, did not find any support in invalidating such pre-injury releases in various statutes enacted by the state legislature, and rejected the application of the <u>parens patriae</u> doctrine to invalidate the release. <u>Id.</u> at 357–61.

The Florida case of <u>Kirton v. Fields</u>, 997 So. 2d 349 (Fla. 2008), highlights many of the arguments made in the above-cited cases deeming pre-injury releases executed on behalf of a minor child unenforceable. In that case, the release was entered into with a commercial motor cross sports park, and the minor died while riding his all-terrain vehicle at the park. <u>Id.</u> at 351. The court held that "public policy concerns cannot allow parents to execute pre-injury releases on behalf of minor children," and that such releases were thus invalid. <u>Id.</u> at

354.    In coming to the decision, the court supplied the

following reasoning:

> While a parent's decision to allow a minor
> child to participate in a particular activity
> is part of the parent's fundamental right to
> raise a child, this does not equate with a
> conclusion that a parent has a fundamental
> right to execute a pre-injury release of a
> tortfeasor on behalf of a minor child.  It
> cannot be presumed that a parent who has
> decided to voluntarily risk a minor child's
> physical well-being is acting in the child's
> best interest.  Furthermore, we find that
> there is injustice when a parent agrees to
> waive the tort claims of a minor child and
> deprive the child of the right to legal relief
> when the child is injured as a result of
> another party's negligence. . . . [W]hen a
> parent decides to execute a pre-injury release
> on behalf of a minor child, the parent is not
> protecting the welfare of the child, but is
> instead protecting the interests of the
> activity provider.  Moreover, a 'parent's
> decision in signing a pre-injury release
> impacts the minor's estate and the property
> right personal to the minor.'  Fields, 961 So.
> 2d at 1129-30.

Id. at 357.

    The Florida Legislature subsequently enacted Florida

Statute section 744.301(3) (2010), which limited the holding in

Kirton "by permitting parents to release a commercial activity

provider for a child's injuries occurring as a result of the

inherent risk of the activity under certain circumstances."

Claire's Boutiques v. Locastro, 85 So. 3d 1192, 1199-1200 (Fla.

App. Ct. 2012).  Yet that statute does not allow parents to

waive negligence, gross negligence, or intentional conduct of

the commercial entity.  Id. at 1200 (citing Fla. Staff An. S.B. 1440 3/17/2010).  The court in Locastro wrote that the legislature thus "recogniz[ed] the essential holding of Kirton," leading the court to hold that the pre-injury release before it, which purported to waive the minor child's ability to sue the commercial entity for negligence, invalid.  Id. at 1193, 1200.

When faced with the prospect of voiding a contract on the premise that it is contrary to public policy, the West Virginia Supreme Court of Appeals has written that "[t]he judicial power to declare a contract void as contravening sound public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt."  Syl. Pt. 4, id. (quoting Syl. Pt. 1, Barnes v. Koontz, 163 S.E. 719 (W. Va. 1932)) (internal quotation marks omitted).  West Virginia has a longstanding public policy favoring freedom of contract.  Syl. Pt. 3, Wellington Power Corp. v. CNA Sur. Corp., 614 S.E.2d 680 (W. Va. 2005) ("a contract shall be enforced except when it violates a principle of even greater importance to the general public").  Yet the court in Wellington, while noting that courts "are not lightly to interfere with this freedom of contract," wrote that the protection of the rights of minors is a "principle of even greater importance to the general public" than the freedom to contract.  See Wellington, 614 S.E.2d at 685.

The West Virginia Legislature has restricted the right of a parent or guardian to release a minor's post-injury claims, similar to the provisions mentioned by courts in other states in support of the restriction on pre-injury releases.  Though parents, guardians, and "next friends" may negotiate a post-injury settlement of a minor's claim for damages relating to an injury to his or her person or property prior to or after the filing of an action for damages, such a settlement requires express court approval.  W. Va. Code. §§ 44-10-14(a)-(c) (2002).

In enacting the modified post-injury rule, the enactment's stated purpose was "to revise the procedures for court approval of settlements made on behalf of minors . . . [by] eliminat[ing] inconsistencies in the present law and provid[ing] a mechanism to protect the interests of the minor and to prevent the expenditure of the minor's funds prior to the time he or she reaches majority."  W. Va. S.B. 215, Introduced Version (2002).  The legislature explicitly requires judicial approval to protect minors' interests in waiving their right to sue for their injuries on the premise that children deserve protection against the compromise of their rights post-injury.

The West Virginia Supreme Court of Appeals in <u>Murphy</u> wrote that a contract is generally upheld when (1) it was freely and fairly entered into between parties in equal bargaining

positions, and (2) it does not interfere with a public interest. 412 S.E.2d at 508-09. Allowing a parent to sign away rights of a minor child to recover for a potential injury incurred while participating in a commercial activity conflicts with a public policy expressed by the West Virginia legislature. Numerous courts in other jurisdictions have found such contracts to be contrary to public policy.

Moreover, Regina Arbogast and Sky Zone were not in an equal bargaining position. The Participation Agreement is a contract of adhesion offered on a "take it or leave it" basis. Regina Arbogast could sign the contract as written to gain access to the Sky Zone facilities for her daughter, or refuse to sign the contract and be unable to use the facilities, but she could not bargain as to the terms of the contract. Cf. State ex rel. Dunlap v. Berger, 567 S.E.2d 265, 273 (W. Va. 2002). Like most modern contracts, there is no real offer or acceptance in an adhesion contract, and no choice as to the contract's terms. See State ex rel. Saylor v. Wilkes, 613 S.E.2d 914, 921 (W. Va. 2005). Indeed, many parents in such a position will not read much, if any, of the full terms of the contract. See Rent-A-Center, Inc. v. Ellis, 827 S.E.2d 605, 617 (W. Va. 2019) ("contracts of adhesion are routinely executed without the signatory's full reading or comprehension of the specified terms").

30

The West Virginia legislature has already expressed a preference for protecting the post-injury rights of children by requiring court approval of legal liability and settlement for such injuries.  And, as noted in Wellington, the protection of the rights of minors is a "principle of even greater importance to the general public" than the freedom to contract.  See Wellington, 614 S.E.2d at 685.  Having taken into consideration the related West Virginia case law, the decisions and reasoning of other jurisdictions considering the issue, and the public policy of West Virginia as expressed by the state legislature, the court, predicting how the West Virginia Supreme Court of Appeals would rule, holds that the Participation Agreement is unenforceable as a matter of law.[6]

---

[6] The parties relatedly argue whether plaintiff is bound to the Participation Agreement by the law of agency, that is, whether Regina Arbogast acted as plaintiff's agent when she signed the contract.  Sky Zone cites no authority in support of the proposition that a parent signing a contract on behalf of her child is acting as an agent of the child.  See, e.g., Syl. Pt. 5, in part, Cole v. Fairchild, 482 S.E.2d 913 (W. Va. 1996) (an agency relationship requires "the existence of some degree of control by the principal over the conduct and activities of the agent").  Further, this argument is subsumed by the broader and more relevant question, examined above, of whether a parent can sign away the rights of her child to recover for later injuries arising out of the negligence of the commercial entity with which the contract was signed.

2.   Arbitration Clause

Remaining is the validity of the arbitration clause in the Participation Agreement.  Although the pre-injury waiver is unenforceable, it does not automatically follow that the arbitration clause is also unenforceable.  Further, there is the question of the effect of plaintiff's disaffirmance upon reaching majority of the contract that was made on her behalf by her mother while she was a minor.

The Participation Agreement contains the following provision: "I agree that if any portion of this Agreement is found to be unenforceable, the remaining portions shall remain in full force."  Participation Agreement at 6.

In Hojnowski v. Vans Skate Park, 901 A.2d 381, the New Jersey Supreme Court held that the pre-injury waiver was unenforceable, but the arbitration agreement remained in force, recognizing that public policy favored arbitration.  The court differentiated pre-injury releases of liability and pre-injury agreements to arbitrate on several grounds: "allowing a parent to bind a minor child to arbitrate future tort claims is not contrary to our duty as parens patriae to protect the best interests of the minor child," id. at 392; "a pre-injury agreement to arbitrate does not require a minor to forego any substantive rights" (as opposed to a pre-injury waiver), id.;

and "permitting arbitration of a minor's claims is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children," id. at 393.

In Sayre by Sayre v. Sky Zone LLC, 2022 WL 1920420 (N.J. Super. June 6, 2022), a lower New Jersey court subsequently applied Hojnowski to the local Sky Zone facility's arbitration provision, where the then four-year-old plaintiff had broken her leg at the facility after her father signed the Participation Agreement and listed plaintiff as an included minor.  Id. at *1, 3.  Recounting and applying the rule from Hojnowski, the court held that the arbitration provision in the Sky Zone Participation Agreement was enforceable as to the minor plaintiff.  Id. at *4.

In Global Travel Marketing, Inc. v. Shea, 908 So. 2d 392, the Florida Supreme Court held that an arbitration agreement made by a mother on behalf of her minor child was enforceable where the agreement was made with a commercial travel entity and the child subsequently died.  The court was explicit in that it was considering only whether the arbitration agreement in a commercial travel contract made on behalf of a minor was enforceable, and not the enforceability of the pre-injury waiver.  Id. at 395 n. 3, 396.  The high court refused to

"equate a pre-injury release of liability with a pre-injury agreement to arbitrate," <u>id.</u> at 403, and ultimately determined that "an arbitration agreement incorporated into a commercial travel contract is enforceable against the minor or minor's estate in a tort action arising from the contract," noting "the absence of legislation restricting agreements to arbitrate the potential claims of minors," <u>id.</u> at 405.

The Louisiana Supreme Court came to the opposite conclusion regarding the Sky Zone Lafayette's Participation Agreement and included arbitration provision in <u>Alicea v. Activelaf, LLC</u>, 218 So. 3d 1001 (Mem) (La. 2016).  There, a minor child fractured his femur at the facility, subsequent to his mother signing the Sky Zone Participation Agreement on his behalf.  <u>Id.</u> at 1001.  Applying the same reasoning as in <u>Duhon v. Activelaf, LLC</u>, 2016 WL 6123820 (La. Oct. 19, 2016), decided the same day, the court determined that the contract was one of adhesion and the arbitration provision was thus unenforceable. <u>Alicea</u>, 218 So. 3d at 1003.

These cases give conflicting opinions as to whether such arbitration agreements are unenforceable.  Furthermore, none of these cases involve a contract being entered into by a parent on behalf of a minor child where the injured child went on to disaffirm the contract upon reaching majority.

Similarly, West Virginia case law on the matter of disaffirmance, as discussed above, addresses when a minor may void a contract that the minor previously entered into on her own behalf, not when the contract was entered into by a parent on the minor's behalf.

Without reaching the issue of whether the arbitration agreement is severable or unenforceable on its own merits, the court predicts that the West Virginia Supreme Court of Appeals would hold that plaintiff's disaffirmance of the contract is sufficient to void that provision.  This conclusion is supported by the fundamental principle of arbitration, explained above, that arbitration is only appropriate as to claims that the party actually agreed to arbitrate.

3.   Defenses of Equitable Estoppel and Third-Party Beneficiary

Having determined that contracts such as the one at present are generally unenforceable, the court must address defendants' argument that plaintiff remains bound by the Participation Agreement under the theory of equitable estoppel and the third-party beneficiary doctrine.

"In the context of arbitration, the doctrine [of equitable estoppel] applies when one party attempts 'to hold [another party] to the terms of [an] agreement' while simultaneously trying to avoid the agreement's arbitration

clause." R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 160–61 (4th Cir. 2004) (quoting Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp., 659 F.2d 836, 839 (7th Cir. 1981)) (some alterations in original). Under both state and federal law, "'a party may be [equitably] estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions in the same contract should be enforced to benefit him.'" Id. at 161 (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000)) (alteration in original); see M.T. Bores, LLC v. Mountain Valley Pipeline, LLC, 552 F. Supp. 3d 580, 585–87 (S.D.W. Va. 2021).

Reviewing plaintiff's complaint and the factual underpinnings of this case, the doctrine of equitable estoppel does not prevent plaintiff from arguing that the arbitration agreement does not apply to her. Plaintiff's causes of action do not arise from duties that Sky Zone assumed under the contract, i.e., the contract does not give rise to this action.

Defendants argue that since plaintiff received a benefit of the contract – access to the Sky Zone facilities – she cannot disavow another part of the contract – the arbitration agreement. Defs.' Mem. Supp. at 8. This is not the

law of equitable estoppel in the Fourth Circuit or West
Virginia.  The fact that plaintiff may have received a benefit
under the contract is not critical; relevant is whether there is
any provision under the contract that plaintiff seeks to enforce
while simultaneously attempting to disavow the arbitration
provision.  See, e.g., Int'l Paper, 206 F.3d at 418; R.J.
Griffin, 384 F.3d at 161–64; M.T. Bores, 552 F. Supp. 3d at 587.
There is none.  Thus, the doctrine of equitable estoppel does
not apply.

Defendants' argument that plaintiff remains bound to
arbitrate as a third-party beneficiary to the Participation
Agreement fares no better.  Pursuant to West Virginia Code
section 55-8-12, "[u]nder limited circumstances, a contract may
be enforced against a non-signatory under a third-party
beneficiary theory." M.T. Bores, 552 F. Supp. 3d at 588 (citing
Bayles v. Evans, 842 S.E.2d 235, 244 (W. Va. 2020)); see W. Va.
Code § 55-8-12.  The non-signatory, third-party beneficiary
"'may enforce a contract only if it is made for its sole
benefit.'" Rogers v. Tug Hill Operating, LLC, 76 F.4th 279, 289
(4th Cir. 2023), cert. denied, 144 S. Ct. 818 (2024) (quoting
Donna S. v. Travis S., 874 S.E.2d 746, 755 (W. Va. 2022))
(emphasis in original).  In short, "the parties must have
intended to secure a benefit to a third party." Id.

There is "a presumption against finding that a contract confers third-party beneficiary status." Id. (citing E. Steel Constructors, Inc. v. City of Salem, 549 S.E.2d 266, 278 (W. Va. 2001)). The West Virginia Supreme Court of Appeals has explained:

> In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration.

E. Steel Constructors, 549 S.E.2d at 278 (quoting Syl. Pt. 2, Ison v. Daniel Crisp Corp., 122 S.E.2d 553 (W. Va. 1961)) (internal quotation marks omitted). To rebut the presumption, a defendant must demonstrate that the contract as a whole and all its surrounding circumstances indicate that the contract was made for the plaintiff's sole benefit.

There is no provision in the Participation Agreement declaring that the contract is being made for the sole benefit of the minor child who, by that agreement, is permitted to use the Sky Zone facilities. Thus, the presumption against finding that plaintiff is a third-party beneficiary under the contract applies. Further, the contract as a whole and the circumstances surrounding its formation indicate that the contract was created for the primary purpose of securing legal protections for Sky

Zone in the event of any injury, not for the benefit of plaintiff.  Indeed, plaintiff could have been permitted to use the facilities in exchange for the entrance fee – the contract is unnecessary to allow her to do so – yet the Participation Agreement is necessary for Sky Zone to secure the participant or their parent or guardian's agreement to the various arbitration, choice of law, voluntary assumption of risk, medical expenses, and release provisions therein.

It is apparent from the scope and extent of the Participation Agreement and the circumstances surrounding its formation that the primary purpose of the contract was to protect Sky Zone from legal liability, not to benefit plaintiff by granting her access to their facilities.  Inasmuch as the contract was not for plaintiff's sole benefit, plaintiff cannot be bound to the Participation Agreement under a third-party beneficiary theory.

C.    Judgment on the Pleadings

As this controversy is not arbitrable, it is left to the court to adjudicate the issues presented, relating to the merits of plaintiff's claims in Counts I, II, and III.

## IV.  CONCLUSION

For the reasons set forth above, defendants' Motion to Compel Arbitration and for Judgment on the Pleadings (ECF No. 13) is DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: July 11, 2024

John T. Copenhaver, Jr.
Senior United States District Judge